**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | | |
|---|---|---|
| TANCREDO L. CORTAZZI DE OLIVEIRA, RAMCOR OVERSEAS, INC., BELCHER ISLANDS CORP., DRASFHILL, INC., PATRICIA GUIMARAES, and FUNDACION RGCS, | ) ) ) ) ) ) | Civil Action No. _____ |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| CRÉDIT AGRICOLE CORPORATE AND INVESTMENT BANK and EMILIO VOLZ, | ) ) ) | |
| Defendants. | ) ) / | |

_____

**NOTICE OF REMOVAL**

Defendant, Crédit Agricole Corporate and Investment Bank ("CA-CIB"), hereby removes this action from the Eleventh Judicial Circuit in and for Miami-Dade County, Florida ("State Court Action") to the United States District Court for the Southern District of Florida, and in support states as follows:

**I.      BASIS FOR REMOVAL**

1.      CA-CIB removes the State Court Action pursuant to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), and its implementing legislation, 9 U.S.C. §§ 201-208 (the "Convention Act").

2.      The Convention is a multi-lateral treaty that requires courts of a signatory country to give effect to commercial arbitration agreements in international contracts between private parties. *See Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974).  The United States has adopted and implemented the Convention through the Convention Act. *Id.*  "The goal of the

Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts . . . ." *Id.*

3.      Section 203 of the Convention Act "confers federal subject matter jurisdiction upon a district court because such a case is 'deemed to arise under the laws and treaties of the United States.'" *Bautista v. Star Cruises*, 396 F.3d 1289, 1294 (11th Cir. 2005) (quoting 9 U.S.C. § 203).

4.      Section 205 of the Convention Act "permits a defendant to remove a case relating to an arbitration agreement covered by the . . . Convention." *Escobar v. Celebration Cruise Operator, Inc.*, 805 F.3d 1279, 1293 (11th Cir. 2015).  The removal may be made "at any time before the trial." 9 U.S.C. § 205.

5.      "To remove a case from a state court to a federal court, a defendant must file in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal.'" *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 551 (2014) (quoting 28 U.S.C. § 1446(a)).  "A statement 'short and plain' need not contain evidentiary submissions." *Id.*  Further, the grounds for removal "need not appear on the face of the complaint but may be shown in the petition for removal." 9 U.S.C. § 205.  As we show below, removal is proper because the State Court Action relates to an arbitration agreement between the parties that falls under the Convention.

## II.      BACKGROUND

6.      Plaintiffs are all foreign entities or individuals residing in foreign nations. Plaintiffs, Tancredo L. Cortazzi de Oliveira and Patricia Guimaraes, are both residents of Porto

2

Alegre, Brazil; Ramcor Overseas, Inc., Belcher Islands Corp., and Fundacion RGCS are foreign companies that are formed under the laws of Panama (Compl. ¶¶ 3-5, 7-8).  Plaintiff Drasfhill, Inc. is a company formed under the laws of the British Virgin Islands (*id* at ¶ 6).  Oliveira is the beneficial owner of Ramcor Overseas, Belcher Islands, and Drasfhill; and Guimaraes is the beneficial owner of Fundacion (*id.* at ¶ 18).

7.      CA-CIB is a French corporation that is registered to do business in Florida (Compl. ¶ 9).  Defendant, Emilio Volz is a resident of Uruguay (*id.* at ¶ 10).

### A. Plaintiff Ramcor Overseas, Inc.'s Agreement to Arbitrate

8.      On February 29, 2008, Ramcor Overseas, Inc. entered into a written agreement with CA-CIB to open an investment advisory account (*see* Account Opening Application (attached as **Exhibit 1**) at 4).  On its application, Ramcor Overseas, Inc. acknowledged it would "be bound by the Investment Advisory Agreement section of the Terms and Conditions" (*see id.*).  The Account Opening Application also provided that "[b]y signing this application, the client acknowledges receipt of and agrees to be bound by all of the provisions contained in the bank's general account terms and conditions, including the provisions in the sections of the terms and conditions governing specific services or accounts selected by the client" (*see id.* at 6).

9.      The General Account Terms and Conditions were provided to Ramcor Overseas, Inc. at the time Ramcor Overseas, Inc. opened its account.  The General Account Terms and Conditions include the Investment Advisory Agreement, which states that "[t]he Client agrees and the Bank agrees by carrying the Account that all controversies between the Client and the Bank or its agents, representatives, or employees arising out of or concerning the Account . . . shall be determined by arbitration in accordance with the rules of the American Arbitration

AMERICAS 94329018

Association" in Miami-Dade County, Florida (*see* May 1, 2007 General Account Terms and Conditions (attached as **Exhibit 2**) at 27).

10.      Ramcor Overseas, Inc. asserts claims for negligence, negligent misrepresentation, fraudulent misrepresentation, and breach of fiduciary duty related to its account with CA-CIB (Compl. ¶¶ 97-106, 117-123, 131-140, 151-157).

## B. Plaintiff Belcher Island Corp.'s Agreement to Arbitrate

11.      On November 10, 2011, Belcher Islands Corp. entered into a written agreement with CA-CIB to open an investment advisory account (*see* Account Opening Application (attached as **Exhibit 3**) at 4).  On its application, Belcher Islands Corp. acknowledged it would "be bound by the Investment Advisory Agreement section of the Terms and Conditions" (*see id.*).  The Account Opening Application also provided that "[b]y signing this application, the client acknowledges receipt of and agrees to be bound by all of the provisions contained in the bank's general account terms and conditions, including the provisions in the sections of the terms and conditions governing specific services or accounts selected by the client" (*see id.* at 6).

12.      The General Account Terms and Conditions were provided to Belcher Islands Corp. at the time Belcher Islands Corp. opened its account.  The General Account Terms and Conditions include the Investment Advisory Agreement, which states that "[t]he Client agrees and the Bank agrees by carrying the Account that all controversies between the Client and the Bank or its agents, representatives, or employees arising out of or concerning the Account . . . shall be determined by arbitration in accordance with the rules of the American Arbitration Association" in Miami-Dade County, Florida (*see* Sept. 24, 2010 General Account Terms and Conditions (attached as **Exhibit 4**) at 26).

AMERICAS 94329018

13.     Belcher Islands Corp. asserts claims for negligence, negligent misrepresentation, fraudulent misrepresentation, and breach of fiduciary duty related to its account with CA-CIB (Compl. ¶¶ 97-106, 117-123, 131-140, 151-157).

### C.  Plaintiff Fundacion RGCS's Agreement to Arbitrate

14.     On November 14, 2011, Fundacion RGCS entered into a written agreement with CA-CIB to open an investment advisory account (*see* Account Opening Application (attached as **Exhibit 5**) at 4).  On its application, Fundacion RGCS acknowledged it would "be bound by the Investment Advisory Agreement section of the Terms and Conditions" (*see id.*).  The Account Opening Application also provided that "[b]y signing this application, the client acknowledges receipt of and agrees to be bound by all of the provisions contained in the bank's general account terms and conditions, including the provisions in the sections of the terms and conditions governing specific services or accounts selected by the client" (*see id.* at 6).

15.     The General Account Terms and Conditions were provided to Fundacion RGCS at the time Fundacion RGCS opened its account.  The General Account Terms and Conditions include the Investment Advisory Agreement, which states that "[t]he Client agrees and the Bank agrees by carrying the Account that all controversies between the Client and the Bank or its agents, representatives, or employees arising out of or concerning the Account . . . shall be determined by arbitration in accordance with the rules of the American Arbitration Association" in Miami-Dade County, Florida (*see* Exhibit 4 at 26).

16.     Fundacion RGCS asserts claims for negligence, negligent misrepresentation, fraudulent misrepresentation, and breach of fiduciary duty related to its account with CA-CIB (Compl. ¶¶ 97-164).

AMERICAS 94329018

### D.  Plaintiff Drasfhill, Inc.'s Agreement to Arbitrate

17.     On February 15, 2013, Drasfhill, Inc. entered into a written agreement with CA-CIB to open an investment advisory account (*see* Account Opening Application (attached as **Exhibit 6**) 4).  On its application, Fundacion RGCS acknowledged it would "be bound by the Investment Advisory Agreement section of the Terms and Conditions" (*see id.*).  The Account Opening Application also provided that "[b]y signing this application, the client acknowledges receipt of and agrees to be bound by all of the provisions contained in the bank's general account terms and conditions, including the provisions in the sections of the terms and conditions governing specific services or accounts selected by the client" (*see id.* at 6).

18.     The General Account Terms and Conditions were provided to Drasfhill, Inc. at the time Drasfhill, Inc. opened its account.  The General Account Terms and Conditions include the Investment Advisory Agreement, which states that "[t]he Client agrees and the Bank agrees by carrying the Account that all controversies between the Client and the Bank or its agents, representatives, or employees arising out of or concerning the Account . . . shall be determined by arbitration in accordance with the rules of the American Arbitration Association" in Miami-Dade County, Florida (*see* Nov. 22, 2011 General Account Terms and Conditions (attached as **Exhibit 7**) at 26).

19.     Drasfhill, Inc. asserts claims for negligence, negligent misrepresentation, fraudulent misrepresentation, and breach of fiduciary duty related to its account with CA-CIB (Compl. ¶¶ 97-106, 117-123, 131-140, 151-157).

## III.   CA-CIB HAS SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL UNDER THE CONVENTION

20.     This Court is the proper court for removal, as it is "the district court of the United

6

States for the district and division embracing the place where the action or proceeding is pending." 9 U.S.C. § 205.

21.     There has been no trial of the State Court Action, nor has there been an adjudication of the merits; thus, this removal is timely under Section 205, which allows for removal "at any time before the trial." 9 U.S.C. § 205; *see also Bautista*, 396 F.3d at 1292 (noting that section 205 "permits removal before the start of trial").

22.     In accordance with 28 U.S.C. § 1446(a), a copy of "all process, pleadings, and orders served upon" CA-CIB in the State Court Action are attached as **Composite Exhibit 8**.

23.     Pursuant to 28 U.S.C. §§ 1446(a) and (d), undersigned counsel certifies that a Notice of Filing Notice of Removal, along with a copy of this Notice of Removal and all of its attachments, will be promptly filed with the Clerk of the Circuit Court of Miami-Dade County, Florida and served on counsel of record.

24.     As of the date of this Notice of Removal, CA-CIB has not filed a responsive pleading in the State Court Action. CA-CIB filed a motion to dismiss on grounds of *forum non conveniens* that was denied by the trial court, and its response to the Complaint was due on or before March 12, 2018. CA-CIB hereby reserves all of its procedural and substantive rights and defenses to the Complaint. By removing the State Court Action to this Court, CA-CIB does not waive any rights or defenses available under federal or state law, including the right to move to compel arbitration. CA-CIB further reserves the right to amend or supplement this Notice of Removal.

**IV.    REMOVAL IS PROPER UNDER SECTION 205 BECAUSE THE STATE COURT ACTION RELATES TO AN ARBITRATION AGREEMENT THAT FALLS UNDER THE CONVENTION**

25.     Section 205 is "one of the broadest removal provisions . . . in the statute books." *Acosta v. Master Maint. & Constr., Inc.*, 452 F.3d 373, 377 (5th Cir. 2006).  It provides federal courts with "remarkably broad removal authority" that is "substantially broader" than the authority in the general removal statute.  *Infuturia Global Ltd. v. Sequus Pharms., Inc.*, 631 F.3d 1133, 1138 n.5 (9th Cir. 2011); *Reid v. Doe Run Res. Corp.*, 701 F.3d 840, 843 (8th Cir. 2012).  Accordingly, the general rule of construing removal statutes strictly against removal does not apply to Convention cases.  *Acosta*, 452 F.3d at 377 (explaining that Congress intended easy removal under Section 205 "to unify the standards by which agreements to arbitrate are observed . . . by trying all Convention cases in federal court.").

26.     The Eleventh Circuit has recently explained that an arbitration agreement falls under the Convention if: (1) the agreement is in writing; (2) the agreement provides for arbitration in the territory of a signatory of the Convention; (3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen. *Suazo v. NCL (Bahamas), Ltd.*, 822 F.3d 543, 546 (11th Cir. 2016).

27.     Here, the arbitration provisions in the investment advisory agreements easily satisfy all four requirements.  First, there is a written agreement to arbitrate in Section 26 of the investment advisory agreements (*See* Exhibit 2 at 27; Exhibit 4 at 26; Exhibit 7 at 26).  Second, the agreements provide for arbitration in the United States, a signatory of the Convention.  *See Thomas v. Carnival Corp.*, 573 F.3d 1113, 1116 (11th Cir. 2009) ("The United States, as a signatory to the Convention, enforces this treaty through Chapter 2 of the U.S. Federal

8

AMERICAS 94329018

Arbitration Act (FAA), which incorporates the terms of the Convention."); *see also* 9 U.S.C.S. § 201 ("The Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, shall be enforced in United States courts.").  <u>Third</u>, the agreements arise out of a commercial relationship between CA-CIB and Plaintiffs, because they agreed to open an investment account with CA-CIB to perform various functions, including the execution of financial transactions.  *See Wilson v. Deutsche Bank AG*, No. 05 C 3474, 2005 U.S. Dist. LEXIS 30959, at *4 (N.D. Ill. Nov. 30, 2005) (finding commercial relationship where "plaintiffs opened a brokerage account" with defendant).  <u>Fourth</u>, none of the parties to the agreements are American citizens (Compl. ¶¶ 3-8); *see supra* 6.  Indeed, this Court has previously found that these agreements fall under the convention.  *See* Order, *Open Sea Inv., S.A. v. Crédit Agricole Corp. & Inv. Bank*, Case No. 17-22366-WILLIAMS (S.D. Fla. January 12, 2018), ECF No. 28 (attached as **Exhibit 9**).  Therefore, the arbitration provisions in the investment advisory agreements fall under the Convention.

28.     The arbitration provision in the investment advisory agreements also plainly relate to the State Court Action.  "[W]henever an arbitration agreement falling under the Convention could *conceivably* affect the outcome of the plaintiff's case, the agreement 'relates to' [sic] the plaintiff's suit."  *Beiser v. Weyler*, 284 F.3d 665, 669 (5th Cir. 2002) (emphasis in original); *see also Infuturia*, 631 F.3d at 1138 (same); *Reid*, 701 F.3d at 844 (same).

29.     Given this extremely low bar, district courts have removal "jurisdiction under § 205 over just about any suit in which a defendant contends that an arbitration clause falling under the Convention provides a defense."  *Pysarenko v. Carnival Corp.*, No. 14-20010-CIV-MORENO, 2014 U.S. Dist. LEXIS 59990, at *19 (S.D. Fla. Apr. 30, 2014) (quoting *Beiser*, 284

F.3d at 669), *aff'd*, 581 F. App'x 844 (11th Cir. 2014).  "As long as the defendant's assertion is not completely absurd or impossible, it is at least conceivable that the arbitration clause will impact the disposition of the case.  That is all that is required to meet the low bar of 'relates to.'" *Beiser*, 284 F.3d at 669.

30.     Issues concerning the scope and merits of arbitration—*i.e.*, whether arbitration should be compelled—are separate from this threshold jurisdictional inquiry and have no bearing on the standards that determine removal jurisdiction.  *See Beiser*, 284 F.3d at 671 (holding that the necessary relationship was established where the defendant alleged that an arbitration agreement required the plaintiff to submit his claims to an arbitrator, and rejecting plaintiff's argument which would "have the court performing merits-like inquiries during the jurisdictional stage of the proceedings").

31.     Here, Plaintiffs' claims in the State Court Action rest principally on allegations that CA-CIB mismanaged their investment accounts, breached alleged duties related to that account, and made misrepresentations regarding those accounts (*see* Compl. ¶¶ 97-164).  Indeed, all of the counts in Plaintiffs' Complaint are related to their investment advisory agreements with CA-CIB (*see, e.g.*, *id.* at ¶¶ 97-164).

32.     The arbitration provision in the investment advisory agreements provide a defense to Plaintiffs' claims in the State Court Action because it requires Plaintiffs to submit "all controversies . . . arising out of or concerning the Account" to binding arbitration (Exhibit 2 at 27; Exhibit 4 at 26; Exhibit 7 at 26).

33.     Therefore, it is likely, not just merely conceivable, that the arbitration provisions in the investment advisory agreements will affect the outcome of Plaintiffs' case.  Accordingly,

AMERICAS 94329018

the agreements "relate[] to" Plaintiffs' claims, and this Court has removal jurisdiction under Section 205.

<h1 style="text-align:center"><u>CONCLUSION</u></h1>

For the foregoing reasons, this action is properly removed to this Court.

Dated: March 12, 2018

Respectfully submitted,

WHITE & CASE LLP
Southeast Financial Center
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131-2352
Telephone: (305) 371-2700
Facsimile: (305) 358-5744

By: */s/ Jaime A. Bianchi*
  Jaime A. Bianchi
  Florida Bar No. 908533
  jbianchi@whitecase.com
  mpellecier@whitecase.com

  James N. Robinson
  Florida Bar No. 608858
  jrobinson@whitecase.com
  jjordan@whitecase.com

  Ryan A. Ulloa
  Florida Bar No. 84757
  rulloa@whitecase.com
  MiamiLitigationFileRoom@whitecase.com

*Counsel for Crédit Agricole Corporate and Investment Bank*

AMERICAS 94329018

<u>**CERTIFICATE OF SERVICE**</u>

I CERTIFY that a copy of the foregoing has been served via e-mail and UPS overnight courier on March 12, 2018, to **Bruce A. Katzen, Esq.** (bkatzen@klugerkaplan.com, cfalla@klugerkaplan.com), **Josh M. Rubens, Esq.** (jrubens @klugerkaplan.com), and **Michael T. Landen, Esq.** (mlanden@klugerkaplan.com, mmathis@klugerkaplan.com), Kluger, Kaplan, Silverman, Katzen & Levine, P.L., Miami Center, 27th Floor, 201 S. Biscayne Blvd., Miami, Florida 33131; to **Jason R. Domark** (jdomark@cozen.com), **Charles C. Kline** (ckline@cozen.com), and **Reid Kline** (rkline@cozen.com), Cozen O'Connor, Southeast Financial Center, Suite 4410, 200 South Biscayne Boulevard, Miami, FL 33131; and, pursuant to 28 U.S.C. §§ 1446(a) and (d), a Notice of Filing Notice of Removal, along with a copy of this Notice of Removal and all of its attachments, will be promptly filed with the Clerk of the Circuit Court of Miami-Dade County, Florida and served on counsel of record.

By:  */s/ Jaime A. Bianchi*
         Jaime A. Bianchi

AMERICAS 94329018